CONTINENTAL OIL & COTTON CO. v. GILLIAM.

(Court of Civil Appeals of Texas. Texarkana. Nov. 22, 1912. On Motion for Rehearing, Dec. 5, 1912.)

1. MASTER AND SERVANT (§ 288*)—INJURIES TO SERVANT—MINORS—ASSUMED RISK.

Plaintiff, a boy 19 years of age, while endeavoring to oil certain cogs connected with a line shaft, slipped from a conveyer box, whereupon his hand was caught in the cogs and crushed. The situation was obvious, and he had oiled the machinery in the same way before, and knew that the cogs were unprotected, and that, if his hand should be caught therein, he would be injured. He had never been warned, however, of the dangers of such work, nor instructed as to a safer way to do the work, and he testified that he did not know of any safer way. *Held* that, since it did not appear that his mind was sufficiently developed to appreciate the risk, he did not therefore assume the risk as a matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

2. MASTER AND SERVANT (§ 289*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Where a minor servant was injured while oiling a bearing the same as he had done many times before in the presence of defendant's superintendent, and, though the method adopted was dangerous, he had never been told of any other way, the fact that he adopted such method of his own volition did not render him negligent as a matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.*]

3. APPEAL AND ERROR (§ 1066*)—HARMLESS ERROR—INSTRUCTIONS.

Where, in an action for injuries to a servant, the negligence claimed was in failing to instruct the servant as to a safe way of oiling certain machinery, and in failing to warn him of the danger of the method he adopted, an instruction that a servant could assume that the machinery, tools, and appliances with which he is called upon to work were reasonably safe, and that the business was conducted in a reasonably safe manner, that he need not exercise ordinary care to see whether this had been done, but that the master must use reasonable care to furnish a reasonably safe

place in which the servant may perform the contemplated services, while erroneous as not applicable to the issues, was harmless; the jury having been otherwise fully instructed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. § 1066.*]

4. MASTER AND SERVANT (§ 293*)—INJURIES TO SERVANT—INSTRUCTIONS—CONSTRUCTION.

In an action for injuries to a servant by his hand being crushed in a shaft bearing, the court charged that if plaintiff was directed to oil the bearing, and was given no directions as to how he should place himself while so doing, and it reasonably appeared to him necessary to stand on a conveyer box, and reach between the bearing and the pinion on a cooker shaft, and, if in doing so plaintiff's foot slipped and his hand was caught in the machinery and injured, and if in doing so he was not negligent, he did not assume the risk, and if in directing plaintiff to perform the service defendant was negligent, and the injury was the proximate result of such negligence, then the jury should find for plaintiff, etc. *Held*, that such instruction was not erroneous as in effect authorizing the jury to find that defendant was negligent in requiring plaintiff to oil the machinery, the duty he was employed to perform.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1156, 1158–1160; Dec. Dig. § 293.*]

5. DAMAGES (§ 216*)—PERSONAL INJURIES—INSTRUCTIONS.

In an action for injuries to a servant, an instruction that, if the jury found for plaintiff, they should allow him such a sum as in their judgment would fairly compensate him in money for the physical and mental pain, if any, from the injuries, and if they believed the injuries were permanent, and would diminish his earning capacity in the future, then, in addition, they should allow such sum as would reasonably compensate him for the diminution, if any, in his capacity to labor and earn money consequent on such permanent injuries, if any, from the time when his disabilities of minority were removed to the end of his life. *Held*, that such instruction was not objectionable as authorizing the jury to calculate the amount plaintiff would lose annually during life, and allow him that sum, instead of a sum which, if paid, at once would reasonably compensate him for the injuries received.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 548–555; Dec. Dig. § 216.*]

6. DAMAGES (§ 132*) — EXCESSIVENESS—PERSONAL INJURIES.

Plaintiff, 19 years of age and employed as an oiler in defendant's oil mill, lost his left hand by having it caught in the bearing of a shaft. *Held*, that a verdict for $8,000 was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

Appeal from District Court, Taylor County; Thomas L. Blanton, Judge.

Action by W. H. Gilliam against the Continental Oil & Cotton Company. Judgment for plaintiff, and defendant appeals. Affirmed.

J. M. Wagstaff and Hardwicke & Hardwicke, all of Abilene, for appellant. Cunningham & Sewell, of Abilene, for appellee.

WILLSON, C. J. At about 5:30 o'clock of the afternoon of October 26, 1910, appellee, then 19 years of age, in an effort, in the discharge of his duty as an employé of appellant, to oil machinery in appellant's oil-mill at Abilene, had his left hand caught by parts of the machinery, and thereby so crushed and injured as to necessitate its amputation. He contended that the injury he had suffered was caused by negligence on the part of appellant, and as his damages recovered the judgment for $8,000, from which this appeal is prosecuted.

[1, 2] Appellant requested the trial court to instruct the jury to return a verdict in its favor, and complains of the refusal of the court to grant its request. It is insisted that it conclusively appeared from the testimony that the risk incurred by appellee in his effort to oil the machinery was one he had assumed, and, further, that it conclusively appeared that in making the effort as he made it he was guilty of negligence which was a proximate cause of the accident which occasioned the injury he sustained. From testimony in the record it appeared that in appellant's mill was a conveyer box used to carry meal. The box extended north and south, and was situated about twelve feet above the floor. It was made of boards two inches thick, and was about twelve inches wide and twelve inches deep. It was not covered. Two or three feet above and about a foot east of this box was another like it. Still further east, and at about the same height, was the "line shaft," used in operating a meal cooker situated thereunder; and still further east and about the same height was the "countershaft." On the line shaft were some uncovered cogs. At a time when the machinery was in operation appellee, for the purpose of oiling same, by means of a ladder, climbed to the top of the lower one of the two conveyer boxes, and, standing with the tips of his toes on the east side thereof, with his right arm resting on the cooker and his body against the other conveyer box, attempted, with an oil can having a spout about two feet long, held in his left hand, to oil a bearing on the countershaft. The spout of the can came in contact with and was caught by the cogs on the line shaft. As a result appellee's feet were caused to slip forward on the box he was standing on, and, as he fell or leaned east over the other box as a consequence of his feet slipping, his hand was caught and crushed by the cogs. There was nothing to prevent appellee from seeing the situation and condition of the machinery as described, and it conclusively appeared he did see same. He had oiled the machinery as many as twelve times before the time of the accident, and each time had oiled it as he was then attempting to. It may be said, therefore, to have conclusively appeared that he knew the conveyer boxes were uncovered and the cogs unprotected. It further may be said to have conclusively appeared that he knew if his hand should be caught by the

cogs as they revolved he would be injured. If it had further appeared that appellee was an adult at the time of the accident, we would be of the opinion that appellant's contention that the risk he incurred was one he had assumed should be sustained. But it conclusively appeared that he was then under 21 years of age, and had never been warned of the dangers of the work he was engaged in, and had never been instructed how to avoid those dangers. Therefore, notwithstanding he knew the situation and condition of the machinery, and that, if his hand should be caught by the cogs, he would suffer injury, it cannot be said as a matter of law that he assumed the risk of the accident. That he may have known the work was dangerous was not sufficient to put him in the attitude of having assumed the risk incurred in doing it. His discretion must have been sufficiently developed to enable him to know and appreciate the nature and extent of the risk he incurred. Whether his judgment was so developed or not was a question for the jury to determine with reference to all the facts of the case, and we think the court below did not err in refusing to treat and determine it as a question of law. T. & P. Ry. Co. v. Brick, 83 Tex. 598, 20 S. W. 511. Nor do we think the court erred in refusing to instruct a verdict for appellant on the ground that it conclusively appeared that appellee was guilty of negligence which contributed to cause the accident. While there was another and safe way to oil the bearing, appellee testified he knew of no other way than the one he pursued—that he had oiled it that way before, in the presence of the superintendent of the mill, and had never been told there was another way. Whether under all the circumstances shown by the testimony he acted as a reasonably prudent person of his age should have acted we think was a question about which reasonable minds might well have differed, and that the court properly submitted it to the jury.

We think the testimony was sufficient to support the findings involved in the verdict (1) that appellant, in directing appellee to oil the machinery without first warning him of the danger he would incur and instructing him how to avoid it, was guilty of negligence which was a proximate cause of the accident resulting in the injury he suffered; (2) that the risk of the accident was not one appellee had assumed; and (3) that appellee was not guilty of negligence which was a proximate cause of the accident, and we find the facts so to be.

[3] The court instructed the jury as follows: "When a servant enters the employment of the master, he has the right to rely upon the assumption that the machinery, tools, and appliances with which he is called upon to work are reasonably safe, and that the business is conducted in a reasonably safe manner. The servant is not required to use ordinary care to see whether this has been done or not, but the master is required only to use ordinary care in furnishing to such servant machinery, tools, and appliances which are reasonably safe, and in furnishing such servant with a reasonably safe place in which to perform the contemplated services." The instruction is attacked as erroneous, because, it is contended, "the evidence and pleadings do not raise the question of safe machinery, tools and appliances," and because it was, it is contended, "in effect a charge to the jury that the plaintiff had a right to believe and to assume that the machinery with which he was called to work would not injure him and that it was not dangerous." We think the instruction was inapplicable to the case made by the testimony, and should not have been given. But the error, for that reason, in giving it, we think should be held to have been harmless. It was an abstract statement—whether an accurate one or not need not be determined—of rules of law inapplicable to the facts, which, in view of the other instructions given to the jury, we think could not have misled them, to the prejudice of rights of the appellant.

In his charge the trial court instructed the jury as to the meaning of the words "ordinary care," "negligence," "contributory negligence," "assumed risk," and "proximate cause," used therein, as to the duty of a master to warn and instruct a young and inexperienced servant assigned to a hazardous service, as to the duty of the servant to use care to avoid injury to himself while engaged in such service, and then further instructed them as follows:

[4] "Now if you should believe and find from the evidence that the plaintiff was employed by the defendant's superintendent, John Sorrells, in the capacity of an oiler in a mill, and that said plaintiff was directed by said John Sorrells to oil a certain bearing on what is termed the "countershaft" located east of what is termed the shaft on the "meal cooker," and that said plaintiff was given no directions with regard to the manner in which he should place himself when oiling said bearing, and that, in performing said duty it then reasonably appeared to said plaintiff that it was necessary for him to stand upon what is known as the lower conveyer, and by reaching between a bearing and a pinion on said meal cooker shaft thus oil the said bearing on said countershaft, and that in so doing the plaintiff's foot slipped and his hand was caught in the machinery and thereby injured, and as a proximate result of such injuries the same had to be amputated, and you further believe that in so doing, if he did so, the plaintiff was not himself guilty of negligence, and that the risk incident to such accident was not assumed by plaintiff, and you should further believe that in directing the said plaintiff to perform said service

the said defendant was guilty of negligence, if it were so guilty, and that the injuries, if any, of the plaintiff were the proximate result of the negligence of said defendant, then in such events you will find for the plaintiff, and in such events would allow him damages in such sum as in your judgment would reasonably and fairly compensate him in money for the physical and mental pain, if any, consequent upon his injuries received, and if from the evidence you believe from the testimony that plaintiff's injuries, if any, are permanent, and will diminish his ability to labor and earn money in the future, then, in addition to the above, allow him such a sum as will reasonably and fairly compensate him for the diminution, if any, in his capacity to labor and earn money, consequent upon such permanent injuries, if any, from September 1, 1911, the time when his disabilities of minority were removed, until the end of his life."

It is insisted that the portion of the charge copied is erroneous, "in that it authorized the jury to find defendant was negligent in requiring plaintiff to do the work of oiling the machinery, a duty which he was employed to perform and which he agreed to perform."

We do not so understand the instruction. As we understand it, the jury were not authorized to find for appellee, unless they believed that in doing the work as he attempted to do it he did not assume the risk he thereby incurred and was not himself negligent, and further believed that appellant was guilty of negligence in directing him to do same without first instructing him as "to the manner in which he should place himself when oiling said bearing." In a paragraph of the charge immediately following the one in question the jury were told: "You are further instructed that if you believe from the evidence that the plaintiff knew, or had the same means of knowing as his employer, of the danger to which he would be exposed in performing services at said place, and further believe from the evidence that the plaintiff failed to exercise that degree of care that a man of ordinary prudence would have used under the circumstances to avoid injuries from such danger, if any, and that by reason of the omission to observe that measure of caution he was injured, he cannot recover unless you believe from the evidence that at the time plaintiff was hurt he was a young man of immature judgment and experience in such business in which he was employed, and that the perils of his undertaking were not communicated or known to him, and that, by reason of such immaturity of judgment, inexperience, and want of information as to the perils of his employment he was incapable of understanding the nature and extent of the hazards to which he was subjected, and that his employer knew or by the exercise of ordinary care should have known of these facts, then, in such events, in order to prevent a recovery, you must believe that he failed to exercise that degree of care that persons of his age, undeveloped judgment, and want of information (if his judgment were undeveloped and if he did labor under a want of information) would ordinarily use under such circumstances, and that his injuries, if any, were the proximate result of negligence of the defendant, if any. It is not merely the fact of plaintiff's minority at the time he was hurt that you relieve from the care demanded of an adult, but such immaturity of judgment, inexperience, and lack of information as has been defined to you would be necessary to relieve him from that degree of care." And in succeeding portions of the charge they were told to find for appellant if they believed appellee was himself guilty of negligence which "proximately caused or contributed to his injury," or if they believed he "assumed the risk incident to his employment," or if they believed he had been warned of the "danger of oiling said machinery in the way and manner that he attempted to oil same." At the request of appellant, the jury were further specially instructed to find for it if they believed appellee "was a minor, but knew of the danger of oiling the machinery in the way and manner he oiled it," or if they believed he "was injured in some way or manner not alleged in his petition and not testified to by him." When the instructions referred to are construed together, we do not think the jury could have understood the court to have meant that they were authorized to find appellant to have been negligent merely because they believed appellee had been required to do work he had engaged to do.

The objection to the portion of the charge in question, that it was "on the weight of the evidence, in that the effect thereof is to tell the jury that the defendant was guilty of negligence in not directing the plaintiff to oil the bearing in some other way than the way he did oil it," we think is also without merit. The theory, and only theory as we understand the charge, upon which the jury were authorized to find that appellant had been guilty of negligence, was that it directed him to oil the machinery, without discharging a duty it owed him to instruct him as "to the manner in which he should place himself" while performing the service. Plainly, so instructing the jury was not equivalent to telling them appellant was guilty of negligence in not directing appellee to oil the bearing in some way other than the way he attempted to oil it.

[5] It is next insisted that the court erred in the portion of the charge in question in his statement as to the measure of the damages recoverable by appellee—the specific complaint being that the effect of the in-

struction "was to authorize the jury to calculate the amount the plaintiff would lose annually for the period of his natural life, and allow him this sum of money," whereas "the rule is that plaintiff should have been allowed such sum of money as, if paid now, would reasonably and fairly compensate him for injuries received." We think the jury as reasonable men must have contemplated that the damages recoverable by appellee when lawfully ascertained would be paid, and could not have been so misled as to base their finding as to the amount thereof on any other theory. Railway Co. v. Lester, 84 S. W. 404.

[6] The verdict and judgment are attacked as excessive. There is nothing in the record indicating that the jury in determining the amount thereof may have been improperly influenced. The amount found represents, it seems, the unbiased judgment of the jury. If, therefore, we regarded the sum found by them as excessive, we would not feel warranted in setting aside their finding and substituting one of our own for it.

The judgment is affirmed.

## On Motion to Correct a Finding Made, Make Other Findings, and for a Rehearing.

In the opinion is this statement: "The spout of the can came in contact with and was caught by the cogs on the line shaft, as a result appellee's feet were caused to slip forward on the box he was standing on, and as he fell or leaned east over the other box, as a consequence of his feet slipping, his hand was caught and crushed by the cogs." So far as the statement is to the effect that appellee was caused to slip on the conveyer because the spout of the oil can was caught by the cogs it is erroneous. The testimony showed, instead, that the spout was caught by the cogs because appellee slipped on the conveyer.

Of findings requested we make the following: (1) That on his application therefor the district court of Taylor county on April 6, 1911, rendered a judgment removing appellee's disabilities as a minor. (2) That appellee in the fall of, 1908 and spring of 1909 worked at a packer in a gin, and in the spring of 1910 worked in the linter room of a gin, where there was machinery. (3) That appellee knew if his feet should slip into the conveyer he was standing on at the time he had his hand crushed, they would be injured by an iron shaft which revolved therein.

The correction as specified of a finding made when the record was first before us, and the additional findings now made do not, we think, furnish a reason for setting aside the judgment rendered here. Therefore, the motion for a rehearing is overruled.