BRYSON et al. v. MOORE.

(Court of Civil Appeals of Texas. Texarkana. April 17, 1913. Rehearing Denied May 8, 1913.)

1. MASTER AND SERVANT (§ 218*)—INJURY TO SERVANT—MINORS—ASSUMED RISK.

It is not enough to establish assumption of risk, as matter of law, by an inexperienced boy less than 17 years old, who just after being put to work, without warning and instruction, removing from a machine thin strips of board cut by it, had his fingers cut off by it, that he knew if he got his hand under the knife it would be cut, but it is also necessary to show that he understood the probability of getting it under there while performing his labors.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 601–609; Dec. Dig. § 218.*]

2. TRIAL (§ 244*) — INSTRUCTIONS — UNDUE EMPHASIS.

It was not error to refuse to give a special charge on contributory negligence, where after the general charge on the subject which had been given the giving of the special charge in the form requested would place undue emphasis on that defense.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 577–581; Dec. Dig. § 244.*]

3. TRIAL (§ 253*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS IGNORING ISSUES.

The requested instruction, in an action for injury to an employé assigned to the duty of taking boards from a cutting machine, that he could not recover if he put his hand under the knife, and at the time he did so he was not engaged in his work of taking and off-bearing boards from the machine, is objectionable as ignoring the issue whether or not he negligently or intentionally put his hand under the knife; the servant's getting his fingers cut off in some unexplained way while not actually engaged in the work "of taking and off-bearing boards" from the machine not being per se contributory negligence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

4. MASTER AND SERVANT (§ 293*)—INJURY TO SERVANT—FAILURE TO WARN AND INSTRUCT —INSTRUCTIONS.

The requested instruction, in an action by a young and inexperienced employé, whose fingers were cut off by a clipping machine, from which he was removing the boards cut by it, that any negligence of the master in not warning or instructing him as to the danger was not the proximate cause of the injury if "it appears" from the evidence that he was "aware" of the danger is bad; as, if he had not been properly instructed, the jury must also believe from the evidence that he appreciated the extent of the danger and understood how to avoid it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1156, 1158–1160; Dec. Dig. § 293.*]

5. TRIAL (§ 192*) — INSTRUCTIONS — ASSUMPTION OF FACT.

A charge may assume a fact which the evidence shows without contradiction.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 432–434; Dec. Dig. § 192.*]

Appeal from District Court, Hopkins County; R. L. Porter, Judge.

Action by Tom Moore, by next friend, against W. L. Bryson and others. Judgment for plaintiff. Defendants appeal. Affirmed.

Glass, Estes, King & Burford, of Texarkana, and C. E. Sheppard, of Sulphur Springs, for appellants. Connor & James, of Sulphur Springs, for appellee.

HODGES, J. H. G. York, as the next friend of Tom Moore, a minor, filed this suit in the court below, for recovery of damages resulting from personal injuries received by the minor while employed in a box factory owned and operated by the appellants. It is alleged, in substance, that Tom Moore was employed and put to work about dangerous machinery, that he was a youth under 21 years of age, of immature judgment, without experience, and ignorant of how to avoid the dangers to which he

# 234 157 SOUTHWESTERN REPORTER (Tex.

was exposed, and that appellants, knowing that fact, failed to instruct or warn him as to how to perform his duties without injury. Appellants answered by general denial and by pleas of assumed risk and contributory negligence generally. A trial before a jury resulted in a verdict for the appellee. The failure to properly warn and instruct the appellee was the only ground of negligence submitted as a basis of recovery.

[1] The first error assigned complains of the refusal of the court to give a peremptory instruction in favor of the defendants below. It is contended that the evidence showed that the risk was one assumed by Moore, and that the court should have so held as a matter of law. The testimony shows that Tom Moore was in July, 1912, employed by the appellants to work in their box and crate factory in Sulphur Springs. He was at the time 16 years and 11 months old, and was without any previous experience in that class of work. It seems that the principal part of his life had been spent on a farm. There was nothing in the evidence to indicate that he was more than a boy of average intelligence. Prior to his employment by the appellants he had lived in the town of Sulphur Springs about two years; he had worked one day for a railroad company, and some time for the telegraph company. When first employed by appellants his duty was to stack slats in a freight car. After pursuing this line of work for a few days he was then transferred to another department and put to work at what he calls the "veneering machine," or clipper. He had been engaged in that particular employment about an hour when three of his fingers were cut off by the knife of that machine. As described in the evidence this machine is constructed with a table, or platform, on which is fixed a large knife, or blade, about 56 inches long, which cuts into slats material automatically fed from the opposite side to that on which Moore stood while at work. This knife is raised and lowered by machinery, and is so adjusted as to cut the material into narrow strips about 4 inches in width. The material seems to have been fed through in two distinct lines, one on each side of the platform, leaving a space of about 5 or 6 inches of the blade in the center which was not used in cutting. It was Moore's duty to remove the slats from the machine after they were cut. He thus testifies as to how he was injured: "There is nothing in between the ends of these pieces, but there is a space of several inches there. I don't know how many inches. This space is—I suppose it is something like 8 or 10 inches. While I am at work the knife is perfectly visible, and I cannot help but see it. There are several inches up and down besides the length of the blade that is visible. There are something like 4 or 5 inches of that blade that is visible the whole length of the blade. Of course you see it in off-bearing. The slats are, two or three, piled up on one another and cuts two or three at a time, probably four or five piled up that way. Instead of there being one piece there will be something like four or five pieces, one piled on top of the other. The automatic feeder pushes it under the knife, and when the knife comes down it cuts through the whole thickness. If there are five there it cuts off five little boards. I could see that it comes down with enough force to cut through the different layers and cuts them all smooth. When the knife comes down and cuts them off it then goes up, and that pushes along until it goes back to the right distance and then comes down again and cuts them off. When I got my fingers cut off I was reaching under the boards with my left hand and taking them off. * * * I had only been at work an hour, I think, taking the slats away. I did not put my hand under there purposely. There was nothing under there to keep my hand from going next to the knife. No one connected with the institution told me anything about the work; no one told me about its being dangerous, nor did any one tell me how to avoid getting my hand under there. I was not thinking about getting my hand under. I knowed it would cut my fingers off if I got it under there. When the last board is cut it remains until the next is cut off. * * * No one gave me instructions or explanation or warning as to whether I should take the last board next to the knife off or not." The witness further testified, in substance, that he knew the work was dangerous, and knew the blade would cut his fingers off if he put them under it; that he did not deliberately stick his hand under the knife, and did not know that he was liable to get his hand under it while performing his work.

There was testimony tending to show that the appellee could not have been injured in the manner described by him. Witnesses for the appellants stated that the feeding machine was automatic; that when the knife was raised more material was forced under it, thus making it impossible for the boy to have run his hand under the knife in the manner described by him in taking up his load. It was shown, however, that this would not be the condition when the last of the material placed upon the machine had passed under the knife and no more was to follow. Appellee testified that he did not remember whether this was the last of the material then upon the platform to be cut or not. Some of the witnesses for the appellants also testified that they reached the scene of the accident within a very short time after it occurred, and found the missing fingers lying behind the knife at about its center, and at a place where the material

did not usually pass through. Appellee testifies that he did not see where his fingers were left; that after he discovered that they were cut off he dropped his load and turned away from the machine. He was contradicted by appellants' foreman as to his not having been cautioned about the dangers attending his work and instructed how to perform it. The verdict of the jury, however, determined that issue in favor of the appellee. The legal effect of appellee's testimony is to show that he knew if he got his hand under the knife it would be cut. But that fact alone is not sufficient to establish an assumption of the risk as a matter of law. It must also be shown that he understood and appreciated the probability of being injured. The duty imposed upon those who employ children about dangerous machinery *to warn and instruct them* is neither burdensome nor difficult, and there is little reason for excusing its nonperformance in a case where an injury results as a consequence of that neglect. The law not only does not impute to children or minors the same capacity possessed by adults for discovering dangerous situations, but presumes that they are less capable of appreciating the extent of the hazards to which they are exposed, and less prudent in guarding against them. A child with full knowledge that he will be injured if he gets into a certain position, or comes in contact with certain machinery, will often, on account of his immature judgment and the lack of proper appreciation of danger, take chances which an adult would avoid. It is not enough to constitute an assumption of the risk by the appellee that he knew he would be injured if he got his hand under the knife. He should have understood the probability of getting it under there while performing his labors. The jury had a right to conclude that it was the duty of appellants to instruct him how to conduct himself so as to avoid getting his hand in that position. Continental Oil & Cotton Co. v. Gilliam, 151 S. W. 890; Ry. Co. v. Brick, 83 Tex. 598, 20 S. W. 511. According to appellee's testimony, he had no idea of getting his hand under the knife at the time he received the injury. In the cases cited the principle of law applicable to this class of cases is so fully discussed that it is needless to here attempt any amplification. We think the court correctly refused the peremptory instruction requested. This also disposes of assignments Nos. 3, 8, 14, 15, and 16.

[2] The sixth assignment of error complains of the refusal of the court to give a special charge on contributory negligence. After the general charge of the court on that subject this charge could not have been given in the form requested without placing undue emphasis on that defense.

[3] The appellants also assign as error the refusal of the court to give the following special charge: "If you believe that plaintiff put his hand under the knife at a point between the places where the timbers passed through the same, and if you further believe at the time he did so, if he did, he was not engaged in his work of taking and off-bearing boards from said machine, then you will find for the defendants." Appellee testified, as before stated, that he was injured while *attempting to remove some slats* from the machine in the ordinary performance of his duty. There was no other eyewitness to the accident, but one or two witnesses did testify that they saw the ends of his fingers which had been cut off lying about the middle of the knife, and at a place where the appellee was not ordinarily called upon to put his hand while taking off the slats. This is the only evidence tending to show that appellee was not engaged in his work at the time he was injured. The mere fact that he got his fingers cut off in some unexplained way while not actually engaged in the work "of taking and off-bearing boards" from the machine is not per se contributory negligence. Whether or not he negligently or intentionally put his hand under the knife was an issue for the jury. That issue was ignored in this charge, and the court did not err in refusing it.

[4] The eleventh assignment of error complains of the refusal of the court to give the following special charge: "Even if you should find from the evidence that Tom *Moore was not warned or instructed* as to the dangers, if any, of his employment at and about the clipping machine, and if you should further find from the evidence that the failure to warn or instruct him, if any, was negligence, still under the law you would not be authorized to find for the plaintiff by reason thereof unless it should further appear from the evidence that such negligence, if any, was the proximate cause of the injury; and in this connection you are further instructed that it would not be the proximate cause of the injury if it appears from the evidence that the said Tom Moore was aware of such danger, if any, or if in the exercise of ordinary care in the performance of his duties he was bound to become aware of such dangers, if any." The latter portion of this charge justified its refusal. It must not only "appear" from the evidence that Tom Moore was "aware" of the danger, but the jury must also *believe* from the *evidence* that he *appreciated* the *extent* of the *danger* and *understood* how to avoid it, or had been properly instructed on those subjects. There was no error in refusing the charge.

[5] It is also complained that the court assumed in his main charge that the appellee was inexperienced. The evidence shows without contradiction that he was; that he had been at this particular employment only about one hour when he was injured.

The judgment of the district court is affirmed.